UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK SCHOTTE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE STOP & SHOP SUPERMARKET COMPANY, LLC, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:23-cv-10897-IT <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

March 22, 2024

TALWANI, D.J.

Plaintiff Mark Schotte ("Schotte" or "Plaintiff"), on behalf of himself and all other persons similarly situated, brings this action against The Stop & Shop Supermarket Company, LLC ("Stop & Shop" or "Defendant"). The Complaint [Doc. No. 1] alleges that Stop & Shop deceptively advertised cleansing wipe products as "flushable" in violation of Mass. Gen. Laws ch. 93A (Count I). Compl. ¶¶ 38–56 [Doc. No. 1]. The Complaint [Doc. No. 1] also alleges claims for breach of express and implied warranties about the wipes (Counts II and III, respectively), unjust enrichment (Count IV), and fraud (Count V). Id. ¶¶ 57–82.

Pending before the court is Stop & Shop's Motion to Dismiss [Doc. No. 11] the Complaint [Doc. No. 1] for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and to dismiss Plaintiff's prayers for declaratory and injunctive relief based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). For the following reasons, the Motion to Dismiss [Doc. No. 11] is DENIED.

I.      **Factual Background**

As alleged in the Complaint [Doc. No. 1], the facts are as follows. Defendant Stop & Shop manufactures, sells, and/or distributes Stop & Shop–branded and Always My Baby–branded cleansing wipes (the "Wipes"), and is responsible for their advertising, marketing, trade dress, and packaging. Id. ¶¶ 1, 9.

Cleansing wipes, a more expensive and increasingly popular alternative to toilet paper, are pre-cut, moistened rectangles of cloth. Id. ¶¶ 2, 7. The Stop & Shop Wipes, which vary in fragrance and style, are all marketed and sold with bold, prominent font labeling them as "flushable" on the front of the packaging. Id. ¶¶ 5, 13. Following the word "flushable" on the front of all packaging is a "†" (a cross or dagger symbol) and the text "For flushing see [back or bottom] panel" in smaller print. Id. ¶¶ 13–14. The back or bottom panel sets forth the following statements in even smaller print:

> Independent lab testing shows these wipes meet INDA Flushable Product Guidelines. **Not all systems can accept flushable wipes.** Ignoring Disposal Instructions may lead to clogs, property damage, or regulatory violations.
>
> **DISPOSAL INSTRUCTIONS**
>
> | **Do not flush if:** | **Flushing ok if:** |
> |---|---|
> | • Violates local rules. | • Permitted by local rules. |
> | • Using RV, marine, or aviation system. | • One wipe per flush. |
> | • Using macerator toilet or household pump. | • No history of clogs or backups. |
> | • Fat or grease are put in any drain or you are unsure of system capability | • Septic follows EPA schedule for alternative systems (annual inspection & pumping). |
>
> If a problem is noticed, dispose of in trash and stop flushing.

Id. ¶¶ 14–15. The remainder of the disclaimer is concealed by a tab. Id. ¶ 15. The concealed portion reads, in part, "not all systems can accept flushable wipes." Id.

In or around February 2023, Plaintiff purchased Wipes from a Stop & Shop grocery store in Beverly, Massachusetts. Id. ¶ 8. Before purchasing the Wipes, Plaintiff reviewed the labeling

and packaging on the front panel and made the purchase upon seeing that the Wipes were "flushable," without realizing that the side or back panel contained the disclaimers. Id. Plaintiff paid a "substantial price premium" of at least 25% more for the Wipes as compared to non-flushable wipes from the same brands and asserts that he would not have done so had he known the Wipes were not actually flushable. Id. ¶¶ 8, 27–28.

## II. Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. Discussion

### A. *Chapter 93A Deceptive Acts and Fraud*

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). To plausibly allege a Chapter 93A claim, a plaintiff must show: "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." Tomasella v. Nestlé

USA, Inc., 962 F.3d 60, 71 (1st Cir. 2020) (internal citations omitted). In making this determination, this court applies the substantive law of Massachusetts. See Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 20 (1st Cir. 2017).

Additionally, because a claim of deception involves fraud, Rule 9(b) requires a plaintiff "'to specifically plead the time, place, and content of [the] alleged false representation[s]' underlying the intentional misrepresentation and Chapter 93A claims." O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 461 (D. Mass. 2018) (quoting Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 (1st Cir. 2017)). Schotte has sufficiently alleged his Chapter 93A claim, including the fraud allegations.

1. Deceptive Acts

An act is "deceptive" for the purposes of bringing a Chapter 93A claim "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." Lowell Gas Co. v. Att'y Gen., 377 Mass. 37, 51, 385 N.E.2d 240, 249 (1979). Specifically, for an act to be deceptive, "(1) there must be a representation, practice, or omission likely to mislead consumers; (2) the consumers must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is likely to affect consumers' conduct or decision with regard to a product." Tomasella, 962 F.3d at 72 (internal citation omitted); see also Dumont v. Reily Foods Co., 934 F.3d 35, 40 (1st Cir. 2019) (repeating this legal framework in the context of advertisements specifically).

a. The Term "Flushable"

Schotte alleges that "flushable" is understood by consumers to mean "suitable for disposal by flushing down a toilet," with the expectation that flushable wipe products will "disperse in a short amount of time after flushing[,]" and that the Wipes are not flushable as

4

advertised. Compl. ¶ 3–4 [Doc. No. 1]. Flushable products, according to the Complaint [Doc. No. 1], must be capable of quickly disintegrating into small pieces so they can "pass through sewer systems without issue [e.g., clogs and other operational problems]." Id. ¶ 3. Schotte alleges that the wipes are not flushable because they do not "break apart or disperse in a reasonable period of time after flushing, resulting in clogs or other sewer damage." Id. ¶ 1. Schotte asserts that he would not have bought the wipes, or would not have paid as much for them, had he known they did not disintegrate quickly as understood by a reasonable consumer. Id. ¶ 6, 28.

To support his definition of "flushable," Schotte offers historical context of "toilet paper [as] the benchmark for flushability[,]" because of its ability to "break down upon contact with water." Id. ¶ 18. Additionally, Schotte points to numerous studies, consumer reports, and articles to support the allegations that the wipes are not truly flushable as understood by a consumer and that Stop & Shop knew or should have known this. Id. ¶¶ 18–27.

Stop & Shop asserts that Plaintiff's claim that the wipes are not "flushable" finds no basis in fact. Mem. ISO Mot. to Dismiss 5–6 [Doc. No. 12]. Stop & Shop argues that the Complaint [Doc. No. 1] contains no allegations that either the term "flushable" or the explanatory language on the underside of the product packaging are false or misleading, when read alone or together. Id. at 5. Stop & Shop further argues that the claims are not plausible because Schotte failed to allege any facts that the Wipes *he purchased* did not go down the toilet, and because all media reports, studies, and articles cited in the Complaint [Doc. No. 1] are "not specific to Stop & Shop or Always My Baby–branded wipes (or even flushable wipes)." Id. at 12.

At this stage, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson, 469 F.3d at 150. Defendant concedes that "[t]he Court need only determine whether the Complaint's allegations make it plausible that,

5

*on a full factual record*, a factfinder could reasonably regard the label as having the capacity to mislead." Mem. ISO Mot. to Dismiss 9–10 (citing Dumont, 934 F.3d at 37, 40) (emphasis added) [Doc. No. 12]. With respect to Plaintiff's definition of "flushable," although the cited articles do not pertain to the brands of wipes at issue here, on a full factual record, it is plausible that Plaintiff could show the Wipes behave like those referenced in the Complaint [Doc. No. 1].

This court's conclusion is bolstered by First Circuit precedent in the context of the Lanham Act because "[t]he elements of a Chapter 93A claim 'overlap[ ]' with those of a Lanham Act false advertising claim." Azurity Pharm., Inc. v. Edge Pharma., LLC, 45 F.4th 479, 487 (1st Cir. 2022) (citing Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Avenue, 284 F.3d 302, 320 (1st Cir. 2002)). In Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co., 228 F.3d 24 (1st Cir. 2000), the First Circuit vacated the grant of a motion to dismiss even though "the distinction between a 'whitening agent' and a 'color enhancer' eludes us, [because] we must credit that allegation in this appeal from a 12(b)(6) dismissal. If Clorox succeeds in proving that liquid Ace contains only an 'enhancer,' rather than a 'whitener,' and if it further establishes the other elements of a false advertising claim . . . it will be entitled to relief under the Lanham Act because [the advertisement] would be literally false." Id. at 36.

Further, the First Circuit has recognized that whether a term with multiple, contradictory definitions or interpretations has the capacity to mislead is best left to "six jurors, rather than three judges, [to] decide on a full record." Dumont, 934 F.3d at 41 (finding that plaintiff plausibly stated a 93A claim where "Hazelnut Crème" and "Freshly Ground 100% Arabica Coffee" were displayed on the front label of a coffee containing no actual hazelnut). As such, Plaintiff has plausibly alleged that Stop & Shop engaged in deceptive acts or practices for the purpose of bringing a Chapter 93A claim.

b.      Stop & Shop's Disclaimers

Plaintiff claims that a reasonable consumer would not notice the disclaimer on the underside of the packaging, nor would they expect the wipes, which are labeled as "flushable," to contain clarifying text that is inconsistent with that representation. Compl. ¶ 16 [Doc. No. 1]. Stop & Shop argues that Plaintiff's interpretation of what a reasonable consumer would notice or expect is speculative and conclusory, and completely negated by the "clear cross-symbol that directly follows the word 'flushable'" and the "clear and obvious disposal instructions" on the packaging. See Mem. ISO Mot. to Dismiss 6–9 [Doc. No. 12]. Stop & Shop urges that other courts have found that the presence of a disclaimer or other clarifying language "may defeat a claim of deception[.]" Id. at 11 (citing Mazella v. Coca-Cola Co., 548 F. Supp. 3d 349, 357 (S.D.N.Y. 2021)). According to Defendant, "flushable" itself is not an unqualified assertion and the "†" symbol and accompanying explanatory text were conspicuous enough that no reasonable consumer could see it and not understand "flushable" to be qualified by a disclaimer. Id. at 12.

In order to change the apparent meaning of the claims and leave an accurate impression, however, disclaimers or qualifications must be "sufficiently prominent *and* unambiguous . . . . Anything less is only likely to cause confusion by creating *contradictory double meanings*." Removatron Int'l Corp. v. FTC, 884 F.2d 1489, 1497 (1st Cir. 1989) (both emphases added).

Stop & Shop suggests that this case is like DiCroce v. McNeil Nutritionals, LLC, 640 F. Supp. 3d 182 (D. Mass 2022), where the court found Lactaid's labels, which plainly state that Lactaid is not a drug or intended to treat any disease, to be sufficiently prominent and clear to dismiss the plaintiff's 93A claim. See Mem. ISO Mot. to Dismiss 11–12 [Doc. No. 12]; DiCroce, 640 F. Supp. 3d at 188–89. Unlike in DiCroce, a factfinder here could reasonably find that the disclaimer on the back of the Wipes packaging is neither sufficiently prominent nor

unambiguous and, instead, that the small-print lists would not be noticed. And a factfinder could also find that even if the lists were noticed, the disclaimers would require consumers to have in-depth knowledge of the sewer or septic system they are using, its plumbing history, as well as "local rules"—not just for a toilet in their residence or office but any toilet they may wish to dispose of the Wipes in. See Compl. 6–8 [Doc. No. 1]. A reasonable jury could find the disclaimer so small and vague that it does not relieve Defendant of any potential liability for its deceptive acts. Accordingly, despite Stop & Shop's disclaimers on the packaging for the wipes, Plaintiff's Complaint [Doc. No. 1] states a plausible deceptive act.

      2.        Plaintiff's Injury

For an economic injury to be cognizable under Chapter 93A, a plaintiff must allege an "identifiable harm" that is caused by the deceptive act and separate from the violation itself. Tyler v. Michaels Stores, Inc., 646 Mass. 492, 503, 984 N.E.2d 737 (2013). A plaintiff must therefore show "real" economic damages as opposed to speculative harm. Shaulis v. Nordstrom, Inc., 865 F.3d 1, 10 (1st Cir. 2017). Stop & Shop contends that "Plaintiff does not sufficiently allege that he suffered a distinct injury or harm and cannot therefore state a legally cognizable claim" under Chapter 93A because the Complaint [Doc. No. 1] fails to plausibly allege that the Wipes are not "flushable" as advertised, and the only basis for the 93A claims are "Plaintiff's threadbare, conclusory assertion that the wipes are not flushable." See Mem. ISO Mot. to Dismiss 5–13 [Doc. No. 12]. Stop & Shop also argues that Plaintiff has alleged only a speculative injury and fails to show "real" economic damages sufficient to state a viable claim under Chapter 93A. Id. at 14.

The argument that Plaintiff has not plausibly alleged the Wipes are not "flushable" as advertised fails for the reasons discussed above, see supra Section III.A.1.a. The additional

argument—that Plaintiff has not shown "real" economic damages—fails as well. Plaintiff alleges that he paid a "price premium" for the wipes. This premium is not merely hypothetical; in the Complaint [Doc. No. 1], Plaintiff provides screenshots from Defendant's website showing non-flushable Always My Baby–branded wipes being sold at $0.04 per wipe and flushable Always My Baby–branded and Stop & Shop–branded wipes being sold at $0.05 per wipe. Compl. ¶ 27 [Doc. No. 1]. "[T]ying the injury to the difference in the market value" is sufficient to separate an injury from the alleged deception, and the "economic harm caused by buying a product that is allegedly misrepresented to be a higher quality than it is" makes a claim viable. Downing v. Keurig Green Mountain, Inc., 2021 WL 2403811, at *7 (D. Mass. June 11, 2021) (finding an injury for 93A purposes where plaintiff bought Keurig Pods after seeing an advertisement promising recyclability, only for the Pods to be unrecyclable under federal guidelines). "Whether the label was actually false, whether the product was actually inferior, and whether any resulting injury is measurable are issues for another day that cannot be resolved on a motion to dismiss." Crane v. Sexy Hair Concepts, LLC, 2017 WL 8728961, at *5 (D. Mass. Oct. 10, 2017). Here, Plaintiff has plausibly alleged that he suffered an economic injury under Chapter 93A and as such, Stop & Shop's Motion to Dismiss [Doc. No. 11] is denied with respect to Count I.

      B.    ***Breach of Express and Implied Warranties***

      To assert a viable claim for breach of an express warranty, a plaintiff must plausibly allege the defendant promised a specific result and failed to deliver on the promise, therefore breaching the express warranty. Jackson v. Johnson & Johnson and Janssen Pharm., Inc., 330 F. Supp. 3d 616, 627 (D. Mass. 2018); Mass. Gen. Laws ch. 106, § 2-313(1)(b). A plaintiff must also show the express warranty was the "basis of the bargain" between buyer and seller, and that the buyer relied on the warranty. Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 102 (D.

9

Mass. 1998). By contrast, in an action for breach of implied warranty, the defendant did not promise a specific result but under Massachusetts law impliedly warranted the product was "fit for the ordinary purposes for which such goods are used[.]" Mass. Gen. Laws ch. 106, § 2-314(2)(c).

Stop & Shop alleges that Counts II and III of the Complaint [Doc. No. 1] should be dismissed along with all other claims because they are "based on the same factual allegations, namely the interpretation of the single word 'flushable.'" Mem. ISO Mot. to Dismiss 5 [Doc. No. 12] (internal citation omitted). For the same reasons as discussed above, Plaintiff has sufficiently pled breach of express and implied warranties. See supra Section III.A.

Stop & Shop's Motion to Dismiss [Doc. No. 11] is denied with respect to both warranty claims.

C.   *Unjust Enrichment*

"[T]o state a claim for unjust enrichment a plaintiff must prove (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable." Stevens v. Thacker, 550 F. Supp. 2d 161, 165 (D. Mass. 2008) (citing 12 Williston on Contracts § 1479).

Stop & Shop argues that Plaintiff's Complaint [Doc. No. 1] fails to state a claim for unjust enrichment because, to the extent that the other claims survive dismissal, Plaintiff has asserted another adequate remedy at law and "a party with an adequate remedy at law cannot claim unjust enrichment." Mem. ISO Mot. to Dismiss 16 (citing Shaulis, 865 F.3d at 16) [Doc. No. 12]. Plaintiff responds that at the pleading stage, a plaintiff may pursue both unjust enrichment and other theories. Opp. to Mot. to Dismiss 16 (citing Fed. R. Civ. Pro. 8(d)) [Doc.

No. 27]. In Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 83–84 (1st Cir. 2020), the First Circuit distinguished the ambiguity in the documents in Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012), which cast into doubt whether a breach of contract claim was available as a legal remedy for the plaintiff, from the unambiguous contract in Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017), where Nordstrom fulfilled its contractual obligations by selling a sweater for an agreed price—blocking plaintiff from asserting an unjust enrichment claim on top of a breach of contract claim. Here, because of the ambiguity of the term "flushable" and Stop & Shop's disclaimers, Plaintiff may pursue an unjust enrichment claim along with other claims at this stage of the proceedings, as in Lass.

Stop & Shop's Motion to Dismiss [Doc. No. 11] is denied with respect to Plaintiff's unjust enrichment claim.

D.   *Fraud*

When a plaintiff brings claims sounding in fraud, there is an exception to Rule 12(b)(6)'s general plausibility pleading standard. Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a party must state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see also N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (holding that the particularity requirement applies not only to actual fraud claims but also to "associated claims where the core allegations effectively charge fraud"). Rule 9(b) requires that a plaintiff's averments of fraud specifically plead the time, place, and content of the alleged false representation. Mulder, 865 F.3d at 22. The purpose of this requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to

prevent the filing of suits that simply hope to uncover relevant information during discovery." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).

The First Circuit has interpreted this rule to require that beyond pleading "the false statements and by whom they were made[,]" a plaintiff asserting a fraud claim must also identify "the basis for inferring scienter." N. Am. Cath. Educ. Programming Found, 567 F.3d at 13. In application, this renders a "general averment of the defendant's 'knowledge' of material falsity" insufficient. Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992), superseded by statute on other grounds, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737). Instead, plaintiffs must put forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Id.

Stop & Shop argues that Plaintiff cannot recover on his fraud claims because he has not sufficiently alleged a false representation of material fact. See Mem. ISO Mot. to Dismiss 15–16 [Doc. No. 12]. This is again premised on Stop & Shop's assertion that Schotte has not plausibly pled that the term "flushable" is deceptive as used on the wipes' packaging. See id. Stop & Shop's argument fails for the reasons discussed above. See supra Section III.A.1.a. Stop & Shop's also argues that Schotte fails to show knowledge of material falsity, but Schotte has plausibly pled that Stop & Shop knew its "flushable" wipes did not break down in a short amount of time by presenting articles, studies, and reports in the Complaint [Doc. No. 1]. Compare Mem. ISO Mot. to Dismiss 15–16 [Doc. No. 12] with Compl. ¶¶ 18–27 [Doc. No. 1].

Plaintiff has also stated with particularity "the who, what, where, and when of the allegedly [misleading] representation[,]" as required by Rule 9(b). Dumont, 934 F.3d at 38 (quoting Kaufman v. CVS Caremark Corp., 836 F.3d 88, 91 (1st Cir. 2016)). In the Complaint

12

[Doc. No. 1], Plaintiff identifies "The Stop & Shop Supermarket Company, LLC" as the "who"; the prominent and misleading "flushable" advertising on the front label of the wipes as the "what"; the packaging of the wipes as the "where"; and the date in or around February of 2023 when Plaintiff purchased the wipes as the "when." Compl. ¶¶ 8–9, 17, 13–14 [Doc. No. 1]. These allegations are sufficient to meet the pleading standard for fraud. See Dumont, 934 F.3d at 39 ("[i]t follows here that Reily Foods and New England Coffee Company are the 'who'; the 'Hazelnut Crème' statement is the 'what'; the label is the 'where'; and the occasion on which Dumont purchased the coffee is the 'when.'"). Plaintiff has met the heightened pleading standard for bringing a claim sounding in fraud under Fed. R. Civ. P. 9(b) and Stop & Shop's Motion to Dismiss [Doc. No. 11] is denied with respect to Count V.

E.   ***Declaratory and Injunctive Relief***

In the Complaint [Doc. No. 1], Plaintiff seeks, inter alia, declaratory and injunctive relief. Compl. 23–24 [Doc. No. 1]. Stop & Shop argues that Plaintiff lacks standing to seek this relief because he has failed to show that he is likely to suffer future injury. See Mem. ISO Mot. to Dismiss 17–18 [Doc. No. 12].

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies[.]" See U.S. Const. art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560-61). "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that she asserts." Katz v. Pershing, LLC, 672 F.3d 64, 71

13

(1st Cir. 2012) (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)). And where the question of standing is based on the pleadings, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016).

To establish injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical[.]" Lujan, 504 U.S. at 560 (internal citations omitted). "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." Hochendoner, 823 F.3d at 731–32 (citing Lujan, 504 U.S. at 563). Where standing is premised on the threat of repeated injury, the plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way[.]" City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).

However, "[a] plaintiff who has been injured by past advertising and who could be exposed to future marketing has standing to press for an injunction so that they can rely on future statements from the company." Keurig Green, 2021 WL 2403811, at *4. Because Plaintiff has alleged that he would be interested in purchasing the wipes again if Stop & Shop ensured they were actually flushable, he has sufficiently pled a likelihood of future injury to establish standing for injunctive and declaratory relief.

Stop & Shop's Motion to Dismiss [Doc. No. 11] pursuant to Fed. R. Civ. P. 12(b)(1) is denied.

### IV.  Conclusion

For the foregoing reasons, Stop & Shop's <u>Motion to Dismiss</u> [Doc. No. 11] is DENIED.

IT IS SO ORDERED.

March 22, 2024                                          /s/ Indira Talwani
                                                        United States District Judge